# U.S. BANKRUPTCY COURT
### District of South Carolina

Case Number: **09-08956-jw**

The relief set forth on the following pages, for a total of 11 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**02/14/2011**



Entered: 02/14/2011

*John E Waites*
Chief US Bankruptcy Judge
District of South Carolina

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 09-08956-JW |
| | Chapter 7 |
| WH Land Company, LLC, | **ORDER** |
| Debtor(s). | |

This matter comes before the Court upon a Motion for Relief from the Automatic Stay ("Motion") filed by William C.B. Floyd ("Floyd"). Objections to the Motion were filed by Michelle L. Vieira ("Trustee") and First Reliance Bank ("FRB"). A hearing was held on January 27, 2011. This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G). Having considered the arguments of the parties set forth in their pleadings and made at the hearing, the evidentiary exhibits offered at the hearing, and the records of the Court, the Court makes the following findings of fact and conclusions of law.[1]

## FINDINGS OF FACT

1. Debtor filed a voluntary Chapter 11 petition on November 30, 2009.

2. According to the amended Schedules and Statements filed February 16, 2010, Debtor owns two tracts of real estate located in Berkeley County, South Carolina consisting of approximately 310 total acres ("Real Property"). Debtor also has a DHEC dirt mining permit with an unknown value listed in Schedule B.

3. The primary creditors are FRB, which holds a first mortgage on the Real Property owned by Debtor, and Floyd who holds a second mortgage on the Real Property. Each mortgage was granted by Debtor in connection with its acquisition of the

---

[1] To the extent any findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are so adopted.

Real Property in November of 2007. There are additionally several insider creditors of Debtor and a few unsecured creditors holding small claims who have not appeared or been active in the bankruptcy case.

4.   It appears Debtor owns the Real Property and the dirt mining permit, but a third party actually performed the dirt mining operations and such operations were managed by an insider company, Warnock Development. The record also indicates that funds from the dirt mining operation were never transferred to Debtor in accordance with the agreement between Debtor and Warnock Development.

5.   On April 9, 2010, FRB filed a motion seeking a determination that the Chapter 11 constituted a single asset real estate ("SARE") case as defined by 11 U.S.C. § 101(51B).[2] No party filed an objection or response to the motion. The Court entered an order on May 3, 2010 determining the Chapter 11 proceeding involved a SARE case. In that order, the Court noted that the motion was unopposed and that Debtor appeared at the hearing on the motion and indicated it had no opposition to such a finding.

6.   To resolve a motion for relief from stay filed by FRB, FRB and Debtor reached a settlement, which was filed with the Court on September 23, 2010 and noticed pursuant to BR 4001(d) ("the Settlement Agreement").

7.   The Settlement Agreement provided a deadline of October 24, 2010 for Debtor to payoff or purchase the debt to FRB. Debtor also agreed to take the necessary actions to collect receivables due Debtor. In the event that Debtor defaulted on these terms, FRB would be entitled, upon the filing of an affidavit of default, to an order granting relief from stay.

---

[2] Further references to the Bankruptcy Code shall be by section number only.

8. Floyd objected to the Settlement Agreement on the grounds that there was "significant value" in the Property and "substantial support" for the plan filed by Debtor. Floyd argued there was no evidence that Debtor had a "realistic hope of paying off FRB's note in such a short period time" and that the Settlement allowed "a single creditor to claim the Debtor's most valuable asset unless the Debtor fulfills a condition that it cannot hope to satisfy."

9. On October 8, 2010, the Court issued a Rule to Show Cause ("RTSC") to determine if cause existed pursuant to § 1112 (b) for the dismissal or conversion of the case. The RTSC was issued based upon the failure of Debtor to pay and collect income and account receivables due to Debtor from an insider company despite specific instructions from the Court to transfer these funds.

10. On October 19, 2010, the Court overruled Floyd's objection, noting that Floyd was protected by a second mortgage interest for which he bargained, and entered an order approving the Settlement Agreement between Debtor and FRB.

11. On October 25, 2010, FRB filed an affidavit of default based upon Debtor's failure to comply with the Settlement Agreement.

12. Based upon the default, the Court entered an order on October 26, 2010 granting relief from stay to FRB.

13. After a hearing was held on the RTSC, the Court entered an order converting the case to Chapter 7 on November 2, 2010 and Michelle Vieira was appointed by the United States Trustee as the Chapter 7 Trustee.

14. In the order converting the case to Chapter 7, the Court ordered Debtor to cease all operations and take the necessary actions to preserve the estate assets for the Chapter 7 Trustee.

15. On January 3, 2011, Floyd filed the Motion seeking relief from the automatic stay, asserting that there is no equity in the Real Property and that the Real Property is not necessary for an effective reorganization. Floyd also asserted he was entitled to relief pursuant to the specific terms of § 362(d)(3). The Trustee objected and asserted value in the Real Property as a dirt mining operation.

16. At the hearing on Floyd's Motion held January 27, 2011, FRB, through its counsel, indicated that it is not presently taking any actions toward foreclosure in order to give the Trustee an opportunity to sell the Real Property in conjunction with the dirt mining permit.

17. Jackson Cobb, a real estate broker, testified for the Trustee regarding the value of the Real Property if sold in conjunction with the mining permit.

18. According to his testimony, the value of the property if sold along with the mining permit would be approximately $5,500,000.00.[3] The starting point for his analysis was the appraisal prepared on behalf of FRB dated August 13, 2009. In that appraisal, the estimated liquidation value of the property in its then existing condition was $3,330,000.00  He also testified that if mined properly over a period of time, the liquidation value of the property would increase from the appraised amount because ponds could be developed on the property creating waterfront, residential lots.

---

[3] The parties indicated at the hearing that Debtor owes FRB approximately $4,500,000.00 and Debtor owes Floyd approximately $500,000.00.

4

19. On cross-examination, Mr. Cobb recognized that the appraisal upon which he relied did not take into account mining operations on the property but valued the Real Property at $18,500 per acre for buildable lots and $2,500 per acre for wetlands or other use. He acknowledged that mining would be considered an "other use." He argued that the land could hold its value at $18,500.00 per acre if mined properly over time. Mr. Cobb further admitted he was unaware that the best offer FRB has received for the Real Property in its marketing effort was $1,000,000.00.

20. Mr. Cobb did not have an opinion of the value of the mining permit itself but acknowledged that the owner of the land would have to agree to the mining and that the mining permit would have no value if the owner of the land did not allow mining operations to continue.

21. The Trustee indicated at the close of the hearing that she planned to immediately file a motion requesting authority to operate dirt mining on the Real Property. She also indicated her plan to sell the Real Property pursuant to § 363(b) in approximately six months. As of the date of this Order, no such motions have been filed with the Court.

## CONCLUSIONS OF LAW

Floyd argues he is entitled to relief from stay based upon cause, including lack of adequate protection, pursuant to § 362(d)(1) and under § 362(d)(2) because Debtor does not have any equity in the property and the property is not necessary for an effective reorganization. Additionally, Floyd argues he is entitled to relief under § 362(d)(3) because the Court has previously ruled this is a SARE case and Debtor has failed to commence monthly payments to Floyd within the prescribed under § 362(d)(3). In its

5

response, FRB agrees that Floyd is entitled to relief from stay because there is no equity in the Real Property. However, the Trustee opposes relief from stay and argues that the Real Property has substantial equity and that the determination that this is a SARE case is improper because the estate owns a mining permit that has substantial value in addition to the Real Property.

### I. *Law of the Case Doctrine and applicability of § 362(d)(3)*

Floyd argues that the Court's prior determination that this is a SARE case is the law of the case and is binding upon the parties to this Motion and in the Chapter 7 case. Thus, Floyd asserts he is entitled to relief from stay as a matter of law because Debtor has not acted within the time periods prescribed in § 362(d)(3). While the Court agrees that § 362(d)(3) is applicable in a Chapter 7 case, it finds that the prior finding that this case is a SARE case is not binding on these parties.

#### *a. Section 362(d)(3) applies in a chapter 7 case*

According to its terms, the application of § 362(d)(3) is not formerly restricted to a chapter 11 case. The section provides relief from stay if the debtor in a SARE case does not file a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time or the debtor fails to commence monthly payments to the secured creditor equaling interest at the applicable nondefault rate within 90 days of the order for relief. 11 U.S.C. § 362(d)(3)(A) and (B). The legislative history discusses the purpose of this section is to give the debtor a chance to file a workable plan of reorganization without abusing the automatic stay provisions. See Riggs Bank, N.A. v. Planet 10, L.C. (In re Planet 10), 213 B.R. 478, 480 (Bankr. E.D.Va. 1997) (quoting S.Rep. No. 168, 103d Cong., 1st Sess. (1993). However, a debtor in a chapter 7 case, as

opposed to reorganization cases, has neither the opportunity to file a plan nor is it likely to be an entity with the purpose or means to make monthly interest payments. The trustee in a chapter 7 is generally viewed as the party with the duty to protect value for the benefit of creditors, but likewise has no means to file a plan or make such payments. Additionally, chapter 11 cases which are converted to chapter 7 are often converted at a point later than the 90 day time period prescribed by the section. In fact, the failure of the debtor to timely make progress toward reorganization or meet the thresholds set forth in the section is often one of the basis for conversion. Nevertheless, § 103(a) states that chapter 3 of the Bankruptcy Code "appl[ies] in a case under chapter 7, 11, 12 or 13 of this title" and caselaw appears to agree. Furthermore, it appears the purpose of this section is to provide secured creditors in such cases a faster resolution of such motions than through other provisions of the Code. Thus, the Court finds that § 362(d)(3) is applicable in a Chapter 7 case. See also Riggs, 213 B.R. at 480 (finding the plain language of § 103(a) seems to be conclusive on this issue); In re Foldesi Family Land Trust #3, 2003 WL 252273865 at *5 (Bkrtcy. D.Idaho) (stating that even though § 362(d)(3) is "clearly oriented toward chapter 11 reorganization cases," the section also applies in chapter 7 cases).

### b. SARE case determination is not binding in this chapter 7 case

Under the circumstances of this case, neither the parties presently before the Court nor the Court itself should be bound by the previous determination that this is a SARE case. The hearing on the motion filed by FRB to determine whether this case qualified as a SARE case was uncontested. In fact, Debtor was present at the hearing and consented to such a determination. Thus, no evidence was presented to the Court

7

regarding the value of the dirt mining permit apart from the Real Property or the extent of the dirt mining operations. At that time, the Trustee was not appointed and not a party to the dispute. Based upon the evidence presented in regards to Floyd's Motion, the Court could make a different determination. Also, a different determination is not barred by res judicata or collateral estoppel because the Trustee was not a party at the time the Court found that this was a SARE case.[4]

Furthermore, the law of the case doctrine does not dictate otherwise. The law of the case doctrine provides that a court's decision upon a rule of law should continue to govern the same issues in subsequent stages of the same case unless: (1) a subsequent trial produces substantially different evidence; (2) controlling authority has since made a contrary decision of law applicable to the issue; or (3) the prior decision was clearly erroneous and would work manifest injustice. Sejman v. Warner-Lambert Co., Inc., 845 F.2d 66, 69 (4th Cir. 1988). The law of the case doctrine provides guidance for courts in determining issues but does not bar a court from reconsidering an earlier ruling. Vieira v. AGM II, LLC (In re Worldwide Lumber, Inc.) 372 B.R. 796, 809 (Bankr. D.S.C. 2007) (citing American Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514-15 (4th Cir. 2003). Federal courts at all levels have a responsibility "to reach a correct judgment under the law." American Canoe Ass'n, 326 F.3d at 515.

---

[4] For either res judicata or collateral estoppel to apply, the party against whom each doctrine is asserted must have had a full opportunity to litigate the issue in the earlier proceeding. Hovis v. Powers Construction Co., Inc., (In re Hoffman Assoc., Inc.), Adv. Pro. No. 91-8293, C/A No. 90-02419 (Bankr. D.S.C. Apr. 24, 1995). The Court notes that the Trustee was not appointed at the time it entered the order designating this case a SARE case and thus the Trustee is not bound by this earlier ruling under either of these doctrines.

8

Despite determining that the prior finding that this is SARE case is not binding, it is unnecessary to re-visit the issue of SARE at this time because the Court finds that Floyd is entitled to relief from stay under § 362(d)(1) and (2).

## II. *Relief from Stay pursuant to § 362(d)(1)*

Section 362(d)(1) allows for relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." "Cause" is undefined in the Code, which gives courts "broad discretion to determine what constitutes 'cause' sufficient to warrant relief from stay." In re Breibert, C/A No. 03-07440-W, slip op. at 2 (Bankr. D.S.C. Feb. 17, 2004). Such discretion allows "a bankruptcy court, as a court of equity, to respond to inherently fact-sensitive situations." In re A Partners, LLC, 344 B.R. 114, 127 (Bankr.E.D.Cal. 2006).

The Court finds sufficient cause to grant Floyd's motion.[5] Over Floyd's prior objection, FRB was granted relief from stay and has the right to proceed with its state court remedies at any time although it has chosen voluntarily to allow the Trustee time to sale the property. The Court believes it is only fair to allow Floyd to seek foreclosure or otherwise join in FRB's foreclosure proceedings.

In addition, considering the conflicting evidence of value presented in this hearing and in this case, the Court is unconvinced that there is equity in the Real Property that provides adequate protection to Floyd for the length of time proposed by the Trustee for the resumption of the mining operations and a related sale of the Real Property. Thus, the Court finds cause exists pursuant to § 362(d)(1) to grant Floyd's motion.

---

[5] The Court recognizes, however, that it retains jurisdiction and authority over the property until any state court foreclosure proceedings are finalized. Thus, if the Trustee were to present a motion to sale the property pursuant §363(b) prior to the completion of the state court remedy, the Court would have authority to adjudicate such a motion and order a sale.

9

### III. *Relief from Stay Pursuant to § 362(d)(2)*

At the time of the hearing, no binding offers had been made to purchase the Real Property as a mining operation. Further, the revenue stream from the mining operations was also uncertain as no contracts to operate the mine or to purchase the dirt from expected mining operations were before the Court. The Trustee has filed no motions to operate the mining or to sell the property as of the date of this Order.

The value of the Real Property after the conclusion of the mining is also uncertain. Mr. Cobb indicated that the property value would be increased if the Real Property was mined correctly. He suggested that ponds could be built to create waterfront lots for a residential development. However, the appraisal on which Mr. Cobb relied upon did not take mining operations into account in arriving at its value of the Real Property. It did indicate a substantial reduction in the value of the Real Property if used for a use other than buildable property.[6] Thus, it is uncertain how much the Real Property value would increase or decrease after the mining is completed. Therefore, the Court also grants Floyd's Motion pursuant to § 362(d)(2).

## CONCLUSION

Based on the foregoing, the Court finds Floyd is entitled to relief from the automatic stay pursuant to § 362(d)(1) and (2).

**AND IT IS SO ORDERED.**

---

[6] The appraisal indicated that the property was worth $18,500.00 per acre for buildable property and $2,500.00 per acres for wetlands and or other use.